**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Health Cost IQ Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>BDG Benefits Design Group Incorporated,<br><br>    Defendant. | No. CV-25-00070-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for default judgment filed by Plaintiff Health Cost, IQ, Inc. ("Plaintiff" or "HCIQ"). (Doc. 11.) For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

**RELEVANT BACKGROUND**

On January 8, 2025, Plaintiff filed the complaint. (Doc. 1.) The complaint alleges that in May 2024, Plaintiff entered into a software-as-a-service license agreement ("the Agreement") with Defendant BDG Benefits Design Group, Inc. d/b/a 1850 Plan Services ("Defendant" or "1850"). (*Id.* ¶¶ 1-2.) Under the Agreement, Plaintiff agreed to provide certain software—which is described as "a comprehensive population health, risk profiling, cost and plan management platform" (hereinafter, "the Software")—and other services to Defendant in exchange for quarterly payments of $73,500. (*Id.* ¶¶ 20-21.) Plaintiff "complied with its obligations under the Agreement" and sent three quarterly invoices for $73,500 to Defendant—the first on July 1, 2024, the second on October 1, 2024, and the third on January 7, 2025—but Defendant failed to pay any of those invoices. (*Id.* ¶¶ 40,

45.)

The complaint further alleges that between August 2024 and October 2024, Plaintiff's representatives engaged in various communications with two of Defendant's principals (Ms. Norman and Mr. Smith) concerning the past-due invoices and other matters related to the Agreement. (*Id.* ¶¶ 25-37.) During one meeting on August 21, 2024, "Ms. Norman confirmed that [Defendant] would perform under the Agreement." (*Id.* ¶ 26.) However, Ms. Norman failed to respond to multiple follow-up inquiries. (*Id.* ¶¶ 27-32.) On October 2, 2024, Mr. Smith reached out to one of Plaintiff's representatives "to discuss the Agreement" (*id.* ¶ 33), and Plaintiff's notes from that call reflect that Plaintiff proposed two options for modifying the terms of the Agreement. (Doc. 1-3.) However, Mr. Smith then ignored several follow-up communications from Plaintiff (Doc. 1 ¶¶ 34-36) before writing on October 16, 2024 "that [Defendant] is a start up with no groups that would benefit from the data stream, that they were considering their options, and that the 6,000 lives was a goal, but not likely until sometime in the future." (*Id.* ¶ 36.) Afterward, Plaintiff sent another follow-up inquiry, but Mr. Smith failed to respond. (*Id.* ¶ 37.)

Based on those allegations, the complaint asserts two claims for relief: (1) a claim for breach of contract in which Plaintiff seeks damages of $220,500 (*i.e.*, the amount of the three unpaid invoices), plus tax and interest at a monthly rate of 1.5% as specified in the Agreement; and (2) a claim for "anticipatory breach of contract" in which Plaintiff seeks damages of $1,249,500 (*i.e.*, all of the future quarterly payments of $73,500 that would have been owed during the remainder of the five-year term of the Agreement), plus tax and interest. (*Id.* ¶¶ 41-62.) Appended to the complaint are the Agreement (Doc. 1-1), the three invoices sent to Defendant before the complaint was filed (Doc. 1-2), and an email chain between Plaintiff and Defendant containing communications about the contract and missed payments (Doc. 1-3).

On January 13, 2025, Defendant was served with process. (Doc. 6.)

On February 7, 2025, Plaintiff applied for entry of default. (Doc. 9.)

On February 10, 2025, the Clerk of Court entered a default. (Doc. 10.)

On February 26, 2025, Plaintiff filed the pending motion for default judgment. (Doc. 11.) Defendant has not responded.

On April 21, 2025, the Court issued an order identifying various perceived deficiencies concerning Plaintiff's request for default judgment as to Count Two (the claim for "anticipatory breach of contract"). (Doc. 12.) The Court ordered Plaintiff to "either file (1) a supplemental memorandum addressing the perceived deficiencies in Count Two identified above; or (2) a memorandum confirming that Plaintiff does not wish to further pursue Count Two and would be satisfied with the entry of a default judgment in its favor on Count One." (*Id.* at 8.)

On May 5, 2025, Plaintiff filed a supplemental memorandum that requests that (1) "default judgment be entered . . . on HCIQ's Count One for breach of contract only"; (2) "Count Two for anticipatory breach of contract against 1850 be dismissed without prejudice"; and (3) "the default judgment award include a fourth quarterly invoice issued by HCIQ to 1850 on April 1, 2025 for $73,500.00." (Doc. 13 at 1-2.) Plaintiff enclosed evidence in support of its request for additional damages. (Docs. 13-1, 13-2.)

**DISCUSSION**

I.   Plaintiff's Request To Dismiss Count Two Without Prejudice

Plaintiff does not identify any rule or authority in support of its request for dismissal of Count Two without prejudice. Plaintiff had options, but each option involved procedural downsides that perhaps Plaintiff wanted to avoid. Plaintiff could have filed a voluntary dismissal under Rule 41(a)(a)(A)(i), which would have resulted in the entire action being dismissed without prejudice, but Plaintiff would have lost the value of already having secured entry of default. *Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) ("As its title, 'Dismissal of Actions,' suggests, Rule 41, or at least Rule 41(a), governs dismissals of *entire actions*, not of individual claims. Most contemporary courts, including our own, have declined to read the rule literally as permitting the dismissal only of an *entire* action against *all* defendants. These same cases, however, have only extended the rule to allow the dismissal of *all* claims against *one*

defendant, so that a defendant may be dismissed from the entire action. Nothing in the case law suggests that Rule 41(a) extends to the voluntary withdrawal of individual claims against a defendant remaining in the case. . . . Instead, withdrawals of individual claims against a given defendant are governed by [Rule] 15, which addresses amendments to pleadings. . . ."). Plaintiff also could have amended its complaint pursuant to Rule 15(a)(1)(B) and omitted Count Two from the amended complaint, but that approach would have had its own drawbacks.

Regardless, the April 21, 2025 order addressed the sufficiency of Count Two (the anticipatory breach claim) on its merits. It identified several issues affecting damages as to Count Two, but preliminarily, it identified a reason why the complaint did not state a claim for anticipatory breach: "[T]he complaint does not allege that any of Defendant's representatives expressed a positive and unequivocal intention not to comply with Defendant's future payment obligations under the Agreement." (Doc. 12 at 4.) Plaintiff's supplemental memorandum makes no effort to address this perceived flaw or explain why this perceived flaw could be cured by amendment.

Given this backdrop, dismissal with prejudice appears to be the proper disposition of Count Two. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248-49 (11th Cir. 2015) (affirming dismissal with prejudice of certain claims considered in evaluating default judgment motion, where leave to amend would be futile and plaintiff was given notice of the deficiencies and an opportunity to respond). Dismissal with prejudice appears to be the common practice of courts that deny default judgment motions as to some or all of the claims when amendment would be futile. *See, e.g.*, *Papagni Fruit & Juice, LP v. James Corrado Inc.*, 2024 WL 4458501, *1 (E.D. Cal. 2024) (granting in part and denying in part motion for default judgment, dismissing with prejudice certain claims); *Willett v. Procopio*, 2019 WL 4266545, *2 (S.D. Cal. 2019) ("Because she didn't bring this suit until 2017, her claim is time barred and she therefore has no chance of success on the merits. Not only must her motion for default judgment be DENIED, her first cause of action for violation of Section 10(b) is DISMISSED WITH PREJUDICE as well."); *Gens v. Amerimade Tech.*

*Inc.*, 2016 WL 9180437, *1 (N.D. Cal. 2016) ("[T]he motion for default judgment is GRANTED in part and DENIED in part. In particular, default judgment is entered as to all three of the defendants on the plaintiff's claims for patent infringement and trade secret misappropriation. The claim for conversion is dismissed with prejudice on the basis that it is preempted by the CUTSA claim."); *Collin v. Zeff*, 2013 WL 3273413, *8 (C.D. Cal. 2013) ("[P]laintiff's motion for a default judgment [is] denied, plaintiff's claims against defendants Klein and Madden [are] dismissed without leave to amend, and judgment [shall] be entered dismissing this action in its entirety with prejudice.").

II.     Default Judgment As To Count One

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although the Court should consider and weigh relevant factors, it "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The relevant factors include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

A.     **Possible Prejudice To Plaintiff**

The first *Eitel* factor weighs in favor of default judgment. If Plaintiff's motion were denied, Plaintiff would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

B.     **Merits Of Claims And Sufficiency Of Complaint**

The second and third *Eitel* factors favor default judgment where the complaint sufficiently states a plausible claim for relief under the Rule 8 pleading standard. *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978).

As noted, in Count One of the complaint, Plaintiff asserts a claim for breach of contract. Under Arizona law, "in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). In its motion for default judgment, Plaintiff provides the following argument as to why the second and third *Eitel* factors are satisfied here as to Count One:

> HCIQ and 1850 entered into the Agreement on or about May 9, 2024. Pursuant to the terms of the Agreement, HCIQ agreed to provide the Software and other services to 1850 in exchange for quarterly payments in the amount of $73,500.00 by 1850 over a five-year term. The Agreement is valid, binding, and enforceable, and HCIQ has complied with its obligations under the Agreement. However, 1850 has failed to make *any* quarterly payments as required by the Agreement, including for the Invoices, sent to 1850 by HCIQ on July 1, 2024, October 1, 2024, and January 7, 2025, which total $220,500.00. 1850 has breached the Agreement by failing to pay the Invoices on receipt, thereby damaging HCIQ. . . .

(Doc. 11 at 5.)

The Court agrees with Plaintiff that the factual allegations in the complaint state a plausible claim for relief as to Count One. The complaint plausibly alleges the existence of a contract, a breach (*i.e.,* Defendant's failure to pay the invoices), and damages.

C.     **Amount At Stake**

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct.

Because Count Two (the anticipatory breach claim) is dismissed, the amount at stake is the damages and interest for Court One (the breach of contract claim). The complaint "demands judgment [for Count One] in the amount of $220,500 plus applicable tax, together with interest, attorneys' fees, court costs, and all other relief to which Plaintiff is entitled at law or in equity." (Doc. 1 ¶ 54.)

The motion for default judgment requests "[a]ctual damages in the principal sum of $1,470,000.00" and "[a]ccrued, pre-judgment interest as of February 28, 2025 in the amount of $16,620.67," as well as post-judgment interest. (Doc. 11 at 11.) The "principal

- 6 -

sum" request is composed of $1,249,500 for the anticipatory breach claim (Count Two) (*id.* at 3) and $220,500 for the breach of contract claim (Count One) (*id.* at 5, 9). Thus, the amount at stake in the default judgment motion for Count One aligns with the complaint: $220,500, plus interest.

The supplemental memorandum includes a request to increase the amount of damages as to Count One to $319,888.52, consisting of actual damages in the amount of $294,000 (*i.e.*, the three unpaid $73,500 invoices referenced in the complaint, plus the additional unpaid $73,500 invoice enclosed with the supplemental memorandum) and pre-judgment interest of $25,888.52. (Doc. 13 at 2.)

Any figure within this range is significant, but an amount in the millions is commensurate with the contemplated payment obligations under the Agreement. *See generally Premier Financial Services, LLC v. Sayegh*, 2009 WL 2809431, *1 (D. Ariz. 2009) (granting six-figure default judgment in breach-of-contract action and citing other cases approving similar awards). Thus, the fourth *Eitel* factor is either neutral or weighs, at most, only weakly against default judgment.

### D.　**Possible Dispute Concerning Material Facts**

Given the sufficiency of the complaint and Defendant's lack of participation in this action, "no genuine dispute of material facts would preclude granting [Plaintiff's] motion." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, the fifth *Eitel* factor favors default judgment.

### E.　**Excusable Neglect**

As Plaintiff correctly notes, because Defendant "was properly served with the summons and complaint in this action," because Plaintiff "has continued to send filings to [Defendant] and its statutory agent, including [the] Application for Entry of Default and the Clerk's Entry of Default," and because Defendant "still not answered or otherwise responded to [the] Complaint or filed a motion to set aside [the] default" (Doc. 11 at 8), the sixth *Eitel* factor favors default judgment.

…

F. **Policy Favoring Merits Resolution**

The last *Eitel* factor usually weighs against default judgment given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b), however, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

G. **Weighing Of *Eitel* Factors**

On balance, the *Eitel* factors favor default judgment as to Count One.

III. Damages

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes,* 559 F.2d at 560. A plaintiff must "prove all damages sought in the complaint." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "[A] default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

As noted, the complaint demands judgment as to Count One "in the amount of $220,500 plus applicable tax, together with interest, attorneys' fees, court costs, and all other relief to which Plaintiff is entitled at law or in equity" (Doc. 1 ¶ 54), and the default judgment motion seeks $220,500 plus interest for Count One. (Doc. 11.) Then, in the supplemental memorandum, Plaintiff requests that the amount of damages associated with Count One be increased, such that the total award would be $319,888.52, consisting of actual damages in the amount of $294,000 (*i.e.,* the three unpaid $73,500 invoices referenced in the complaint plus an additional unpaid $73,500 invoice, dated April 1, 2025, enclosed with the supplemental memorandum) and pre-judgment interest of $25,888.52. (Doc. 13 at 2.)

The Court will limit the damages to the amount sought in the complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Although "Rule 54(c) presents no bar to awarding actual

- 8 -

damages in a default judgment where the complaint sought those damages in an amount to be proven at trial," *AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F.4th 552, 555 (9th Cir. 2025), Plaintiff's theory of damages here is that its "claim is for a sum certain or a sum that can be made certain by computation." (Doc. 11 at 9.) Where a plaintiff's damages are determined by indisputable hard figures and simple math, and that math has been done in the complaint, such that the sum certain is specified in the complaint, there is no "amount to be proven at trial." These are not magic words that can simply be added to every complaint to invalidate the provision in Rule 54(c) that a default judgment must not "exceed in amount" what is demanded in the pleadings.

Thus, the appropriate award as to Count One is $220,500 plus interest.[1] As for prejudgment interest, the Agreement specifies that if Defendant "fails to make any payment when due," Plaintiff "may charge interest on the past due amount at the rate of 1.5% per month calculated daily and compounded monthly or, if lower, the highest rate permitted under applicable law." (Doc. 1-1 at A7 ¶ 10(b).) This provision is enforceable and overrides Arizona's default prohibition against compound prejudgment interest. *Ace Automotive Products, Inc. v. Van Duyne*, 750 P.2d 898, 901 (Ariz. Ct. App. 1987) (holding that although "the Arizona statute that sets the rate of interest for legal indebtedness in the absence of a written contractual provision by the parties," nothing "precludes enforcement of a contractual provision that prejudgment interest in suits arising from the contract be compounded"). Additionally, although Plaintiff's supplemental memorandum, filed on May 5, 2025, calculated the aggregate prejudgment interest on the first three $73,500 payments as $24,637.78 (Doc. 13 at 2), this calculation must be updated to account for the additional time that has now elapsed. As of today's date, June 4, 2025, the Court's calculations indicate that the aggregate prejudgment interest on the first three $73,500 payments is $28,328.39.

As for post-judgment interest, Plaintiff asks that it be calculated pursuant to the

---

[1] The complaint also seeks "applicable tax" (Doc. 1 ¶ 54), but Plaintiff does not seek tax in the default judgment motion.

default rate under 28 U.S.C. § 1961. (Doc. 13 at 3.) That request is granted.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion for default judgment (Doc. 11) is **granted in part and denied in part**.

2. Count Two of the complaint is dismissed with prejudice.

3. As to Count One, Plaintiff is awarded $248,828.39 (*i.e.*, damages of $220,500 plus prejudgment interest of $28,328.39), as well as post-judgment interest pursuant to 28 U.S.C. § 1961.

4. The Clerk shall enter judgment accordingly and terminate this action.

5. Within 14 days of entry of judgment, Plaintiff may file a motion for attorneys' fees and costs.

Dated this 4th day of June, 2025.

Dominic W. Lanza
United States District Judge